UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BOBBY HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-CV-00329-JD-CAN |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Bobby Howard's August 17, 2011, complaint seeking judicial review of the Commissioner of Social Security's final decision denying disability benefits. Howard filed his opening brief on February 27, 2012, *see* DE 20, and the Commissioner responded on June 4, 2012, *see* DE 28. The matter is now ripe for adjudication, as Howard has neither replied nor sought an extension of time within the 14-days proscribed by Local Rule 7-3(c). The Court finds that the decision of the administrative law judge in this case is flawed, but is unable to conclude, based on the record before it, that Mr. Howard is entitled to disability benefits. The Court therefore remands this case to the Commissioner.

### I. PROCEDURAL HISTORY

On November 15, 2007, Mr. Howard filed an application for a period of disability and disability insurance benefits beginning March 13, 2007—the day after an ALJ issued a decision that Mr. Howard had been "not disabled" through March 12, a decision which Mr. Howard did not challenge in court. He claims that he cannot work because he is in severe pain all the time, caused by an injury to his neck and lower back (Tr. 199). His claim was denied initially on February 27, 2008, and on reconsideration on April 23, 2008. Following a timely request for a

hearing, Mr. Howard appeared with counsel at a video hearing before ALJ John S. Pope on March 16, 2010. Mr. Howard testified at the hearing and was questioned by the ALJ. The only other witness at the hearing was an impartial vocation expert. On April 12, 2010, the ALJ issued a decision denying Mr. Howard's claim. When the Appeals Council denied Mr. Howard's request for review on July 27, 2011, the ALJ's determination became the Commissioner's final decision. Mr. Howard then filed this lawsuit under 42 U.S.C.§ 405(g), seeking judicial review of the ALJ's determination.

## II. FACTS

**A.     Medical History**

Mr. Howard's medical history of back and neck problems and pain extends well before March 13, 2007, but the denial of his earlier application sets that as the starting point for our inquiry in this case. On March 23, 2007, Dr. Gregory Hoffman, M.D., assessed Mr. Howard for complaints of diffuse neck, shoulder, and arm pain. Dr. Hoffman reported that a neck exam revealed pain with all ranges of motion and that even touching the skin caused pain (Tr. 260). Mr. Howard's reflexes were intact, however, and the sensory exam was unremarkable. Dr. Hoffman reviewed x-rays and noted that Mr. Howard had diffuse arthritic and degenerative disease in his neck (Tr. 260). Dr. Hoffman explained to Mr. Howard that he was not a surgical candidate because of his diffuse arthritis and that medical treatment with a rheumatologist would be his best option (Tr. 260). In June 2007, Nurse Practitioner Maureen Neely offered an opinion to Mr. Howard's disability insurance carrier that Mr. Howard had a "severe limitation of functional capacity," was "incapable of minimal (sedentary) activity," and "[could not] return to work at [that] time" (Tr. 447).

Mr. Howard was then referred to Dr. Ajit Pai, M.D. for pain management. At his first visit in June 2007, Dr. Pai noted an impression of degenerative cervical disc disease, bilateral cervical radiculopathy, and some left arm weakness (Tr. 444). Dr. Pai prescribed pain medication and began to see Mr. Howard on a monthly basis (Id.). Dr. Pai's treatment notes indicate that Mr. Howard reported increasingly severe pain and occasional spasms in his neck, back, and radiating into his arms and legs, and that he had difficulty walking due to the pain (Tr. 437–441). Dr. Pai continued to prescribe a high dose of pain medications, and repeatedly noted that Mr. Howard was stable and compliant on those medications. In October 2007, Dr. Pai ordered an MRI of Mr. Howard's lumbar spine, which found minimal degenerative disk disease at T12–L1 and to a lesser extent at L4–L5 (Tr. 296). In November 2007, Mr. Howard's back pain had become severe, and Dr. Pai performed a steroid injection into the lower back (Tr. 437–38). The injection seemed to help some with back and leg pain, but within a few months Mr. Howard requested another injection and also received a TENS Unit to help relieve his neck pain (Tr. 346–47). His continued to report severe pain, such that he could not stand or sit, and received additional steroid injections in May and June 2008.

In October 2008, Mr. Howard began seeing Dr. Pai's partner, Dr. Arman Borhan, M.D., though he would see Dr. Pai once more that December. Dr. Borhan saw Mr. Howard every other month for a year. His treatment notes are similar to Dr. Pai's, noting that Mr. Howard was generally not in acute distress but complained of generalized pain in multiple locales, burning pain radiating to his legs. Dr. Borham observed tenderness along the lumbar and cervical spine and assessed Mr. Howard with lumbar and cervical degenerative disc disease, lumbar and cervical spondylosis (degenerative arthritis), and lumbar and cervical radiculpathy (Tr. 417–21). In October 2009, Dr. Borhan filled out a "Medical Assessment of Ability to Do Work-Related

Activities (Physical) for Mr. Howard, and indicated that he was limited in all work activities. Notably, he opined that Mr. Howard could never lift or carry even up to 10 pounds, could sit, stand, or walk zero total hours in an 8-hour workday. Mr. Howard's hands and feet were affected and he could only occasionally use his hands for simple grasping or fine manipulation (Tr. 371). He was severely limited in almost all functions (Tr. 371). Dr. Borhan cited the October 2007 MRI, which indicated degenerative disk disease, as the medical finding supporting his assessment. Dr. Borhan also filled out a State Form 1350 "Physician Capacity and Limitations" form opining that Mr. Howard was significantly limited in most activities.

In January 2008, consultative examiner Dr. Peter E. Sices, M.D., conducted a complete physical examination of Mr. Howard (Tr. 310). He noted that Mr. Howard's gait was normal but slow, and appeared stable and sustainable. Mr. Howard's joint range of motion was limited in multiple areas but that cervical range of motion was very inconsistent and greater when Mr. Howard was distracted. There was no joint swelling that would affect Mr. Howard's ability to carry light objects. Further, there was no deformity in Mr. Howard's spine and he was able to get onto the examination table without assistance, and without apparent pain or fatigue. Finally, Dr. Sices noted that Mr. Howard's presentation of his medical history was vague and inconsistent, that his effort during the examination was questionable, and that the cause of his pain symptoms was unknown (Tr. 312).

Then in February 2008, State Agency consultant Dr. F. Lavallo, M.D., reviewed Mr. Howard's medical record and submitted an assessment of Mr. Howard's abilities and limitations (Tr. 336). According to the opinion, he could occasionally lift up to 20 pounds and frequently lift 10 pounds; he could stand or walk for about 6 hours in an 8-hour workday and could also sit for about 6 hours in an 8-hour workday; his ability to push and pull was unlimited; finally, he had

4

numerous postural limitations, and could only occasionally climb, balance, stoop, kneel, crouch, or crawl (Tr. 337–38). As evidence of these limitations, Dr. Lavallo cited a normal, but slow, stable and sustainable gait, decreased range of motion in spine, mild degenerative disc disease in the lumbar spine and arthritic changes in the upper spine (Tr. 337). In April, another State Agency consultant, Dr. R. Fife, M.D., submitted a very similar opinion, indicating nearly all the same limitations and medical evidence, though also including chronic diffuse pain as a cause of the limitations (Tr. 352–53). Both physicians opined that Mr. Howard's allegations regarding his own symptoms were not supported by appropriate medical evidence and were inconsistent with the evidence in the file (Tr. 341, 356).

The record also contains evidence of Mr. Howard's mental health. Mr. Howard presented to the Four County Counseling Center in April 2007 seeking treatment for anger and depression, and was diagnosed with Major Depressive Disorder (Tr. 271). He failed to appear for follow-up therapy, however, and was discharged (Tr. 269). State Agency Consultative Examiner Dr. Gary Eliot, Ph.D., also examined Mr. Howard in January 2008 and diagnosed him with Major Depressive Disorder (Tr. 315–17). In February 2008, State Agency consultant Dr. Joelle Larsen, Ph.D., submitted a mental residual functional capacity assessment, opining that Mr. Howard was moderately limited in some areas of understanding and memory, sustained concentration and persistence, and social interaction (Tr. 332–33). Dr. Larsen also stated that Mr. Howard would be restricted to work that involved brief, superficial interactions with fellow workers, supervisors, and the public (Tr. 334).

**B.     Administrative Hearing**

At the video hearing on March 16, 2010, Mr. Howard testified that he had degenerative disc disease, arthritis, and chronic pain (Tr. 42). He stated that he had been told that nerves were

getting pinched off in his leg, which caused burning pain and difficulty standing and walking (Tr. 43). He reported that he had been seeing a pain management doctor—whom he identified as Dr. Borhan—since 2007, and that he had been treated mostly with medication but also occasionally shots (Tr. 44). The medication helps some, but not a lot, and causes him to drift in and out of sleep (Tr. 57). When the ALJ asked about his daily activities, Mr. Howard stated that he spends most of the day in his recliner, just getting up to go to the bathroom (Tr. 48). He is able to make a simple sandwich for lunch (Tr. 49). He can dress himself, but has some difficulty bathing himself (Tr. 51). To the ALJ's question about whether he ever did grocery shopping, Mr. Howard responded that his wife and daughter do it and that he didn't "remember doing it figure lately, no" (Tr. 51). He has no hobbies, does not exercise, and does not belong to any social organizations (Tr. 51, 53). He admitted that a psychiatrist had said he was depressed, but did not know how that would affect his ability to work (Tr. 51–52). He stated he had problems with concentration, but gave no specific example—the ALJ moved on to discuss pain without following-up (Tr. 54).

Mr. Howard testified that his "whole spine's messed up": the worst pain—which he described as burning—was in his neck, down past the shoulder blades, on the spine, and then up and in the center of his back, down through both legs (Tr. 54). The pain was there all the time, but sometimes much worse—as if someone set him on fire—occasionally, and he would wake up screaming at night (Tr. 55). He agreed that physical activity could make the pain worse, but also stated that anything could "make it go fired up" (Tr. 55).

As far as his physical capabilities go, Mr. Howard testified that it hurt him to lift his one-year old grandson, but did not know how much the child weighed (Tr. 56). He could pour himself a glass of milk (Tr. 56). When the ALJ asked how much time out of an eight-hour day he

6

could spend walking, Mr. Howard answered that he "wouldn't know" and had never walked for eight hours (Tr. 56). He stated that he could not stand long, but was not sure how long because he "never had a stop watch" (Tr. 57). When asked how long he could sit in a chair other than his recliner, he stated that he was hurting then after sitting for the hearing (Tr. 57). He did not drive often, claiming to have difficulty operating a car and that leg spasms made the pedals difficult (Tr. 57). In conclusion, he stressed to the ALJ "how messed up [his] neck is," his constant pain, his attempts to convince doctors to operate on him at his own risk, and the doctors' advice that surgery would do no good (Tr. 58).

The ALJ then asked the vocational expert, Susan Engenberg, to consider a 41 to 44 year old individual with a GED and Mr. Howard's past work history, who would be limited to light work; could only occasionally climb ramps and stairs, balance, scoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; and would be limited to jobs involving simple instructions and brief superficial interactions with coworkers, supervisors, and the public (Tr. 60). Ms. Engenberg agreed that such a hypothetical individual could not return to Mr. Howard's past work and would have no transferrable skills (Tr. 60). But she testified that there would be other light work he could do in the regional economy, including light housekeeping (13,000 jobs in the state of Indiana), food preparation worker (19,000 jobs), and packer (10,000); in total, the vocational expert stated that there were 50,000 jobs in the region that would accommodate the listed restrictions (Tr. 61). If, however, Mr. Howard was entirely credible concerning his symptoms and limitations—which the vocational expert could not hear over the video conferencing connection but which the ALJ summarized as not being able to lift more than a gallon of milk and daily activity limited to staying in a recliner—the vocational expert testified

7

that jobs would be eliminated because Mr. Howard would not be able to work eight hours per day or forty hours per week (Tr. 61).

**D.    The ALJ's Decision**

In his written decision, the ALJ described and followed the familiar five step sequential evaluation process. Applying steps one through three, the ALJ found that Mr. Howard had not engaged in substantial gainful activity between March 23, 2007 (step one), and June 30, 2009, and that his degenerative disc disease, arthritis, obesity, and depression were severe impairments (step two) but did not automatically qualify him for disability benefits (step three) (Tr. 20–21). The ALJ then found that Mr. Howard had the residual functional capacity to perform light work,[1] except that he had the additional limitations that he had described to the vocational expert (Tr. 22).

To support this RFC finding, the ALJ then discussed Mr. Howard's testimony at the hearing and the medical evidence. Beginning with Mr. Howard's testimony, the ALJ noted that Mr. Howard testified that he had chronic pain, an inability to turn his neck, left leg pain and weakness, and arthritis, and that these impairments affected his ability to stand, walk, sit, lift, and carry, and thus prevented him from engaging in work-related activity. The ALJ related that Mr. Howard complained of a burning pain, sometimes increasing to the point where it feels like he is on fire. The ALJ also discussed Mr. Howard's testimony regarding his daily living activities, his social interactions, and his answers to the ALJ's questions regarding his specific abilities.

---

[1] Light work involves lifting no more than 20 pounds at a time and frequently carrying objects weighing up to 10 pounds, as well as either a good deal of walking or standing or sitting most of the time pushing or pulling arm and leg controls. *See* 20 C.F.R. § 404.1567(b). A finding of light work generally also implies an ability to do sedentary work, absent additional limitations. *Id.*

The ALJ then found that Mr. Howard's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but found that Mr. Howard's statements relative to the intensity, persistence, and limiting effects of the symptoms were not fully credible.  The ALJ gave three reasons. First, he did not think that the medical evidence from Mr. Howard's own physicians supported his claims: treatment records from Dr. Pai, whom the ALJ identified as Mr. Howard's current pain management specialist, "show recurring complaints of back, next and leg pain, but also consistently indicate that the claimant is stable on his medications and certainly give no indication of the severely limiting, debilitating pain which the claimant alleged in his hearing testimony" (Tr. 25). Second, the ALJ found that the allegations of disabling pain were "highly inconsistent" with Dr. Sices's January 2008 physical examination, which noted no sign of joint swelling or synovitis and opined that Mr. Howard should have no problems carrying light objects, that his effort on examination was questionable, that the cause for his pain symptoms was unknown, and that he had no impairments related to coordination, hearing, speech, memory, concentration, attention span, or fine and gross manual dexterity. Third, the ALJ noted that Mr. Howard's responses at the hearing were consistently vague and sometimes evasive, which left the impression that the claimant may have been less than entirely candid. He concluded that the limitations that Mr. Howard alleged could not be verified with any reasonable degree of certainty and that even if the limitations were as severe as alleged, they could not necessarily be attributed to Mr. Howard's medical condition.

Regarding the medical evidence, the ALJ relied primarily on the State Agency consultants' assessments and also noted that his RFC determination was generally consistent with the physical limitations found in the prior ALJ decision in 2007. The ALJ mentioned a number of forms from Dr. Michael Persons, M.D.,  but gave them little weight because they

predated the beginning of the period of disability under consideration in his application. The ALJ also considered a June 14, 2007, report from Nurse Practitioner Maureen Neely that offered the opinion that Mr. Howard could not return to work, but gave it little weight because Ms. Neely is not an acceptable medical source, and her opinion was based primarily upon the subjective statements of the claimant and was not consistent with the medical evidence in the record.

The ALJ noted Dr. Borhan's October 2009 assessment, but rejected it for several reasons. First, he found Dr. Borhan's treatment relationship unclear because Dr. Borhan only saw Mr. Howard 5 out of 25 visits to the pain management practice, and the rest of the visits were with Dr. Pai, who did not submit an opinion. Second, the form contained no narrative support and, according to the ALJ, "a standard form medical questionnaire assessing the claimant's residual functional capacity in this instance is entitled to little weight where the opinion is without explanation in the form of a narrative." Third, "[i]t appears the opinions primarily relied upon the claimant's subjective reports rather than objective evidence." Finally, "the treatment notes indicate[d] generally conservative treatment consisting of medications and injections."

Based on his RFC finding, the ALJ concluded at step four that Mr. Howard was unable to perform his past relevant work as an auto assembly worker (Tr. 27). But at step five, the ALJ determined that Mr. Howard could perform a significant numbers of jobs in the national economy and therefore found the Mr. Howard was not disabled. Although Mr. Howard could not perform the full range of light work—which would have dictated a finding of "not disabled"—the testimony of the vocational expert indicated that he could still perform representative occupations such as a housekeeper (15,000 jobs), food preparer (19,000 jobs), and packer (10,000 jobs) and that there were approximately 50,000 light work, unskilled jobs and 10,000 sedentary, unskilled jobs in the region that would accommodate Mr. Howard's RFC.

## III. STANDARD OF REVIEW

The ALJ's ruling becomes the final decision of the Commissioner when the Appeals Council denies review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Finally, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## IV. ANALYSIS

Mr. Howard's central argument is that the ALJ erred by rejecting Dr. Borhan's opinion regarding his limitations, which supported a finding of disabled.[2] Mr. Howard argues that the ALJ should have given Dr. Borhan's October 2009 opinion controlling weight. Since Dr. Borhan's assessment of Mr. Howard's limitations would prevent him from performing full time work, giving it controlling weight would require a finding of disabled. Although the Court finds flaws with the ALJ's decision in its discussion (or lack thereof) of the controlling weight issue, as well as the weight ultimately given to Dr. Borhan's opinion, it cannot determine based on the record before it that Dr. Borhan's opinion was entitled to controlling weight.

**A.  The ALJ Failed to Discuss or Apply the Treating Source Rule**.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if the opinion is "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *White v. Barnhart,* 415 F.3d 654, 658 (7th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)). However, while the treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ, thus, may discount a treating physician's medical opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Ultimately, an

---

[2]Mr. Howard also argues that the ALJ also erred in completely rejecting Nurse Practitioner Neely's opinion, solely on the ground that it was not an acceptable medical source. Because it remands on other grounds, the Court need not fully address this argument, which misstates the ALJ's evaluation of Ms. Neely's opinion in any event. The ALJ did not reject Ms. Neely's opinion but gave it "little weight." Nonetheless, the ALJ's assessment of Ms. Neely's opinion should also be reconsidered in light of the Court's ruling on Dr. Borhan's opinion, with which it was largely consistent.

ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.*

A lax standard of review is not no review at all, however. In this case, the ALJ did not discuss whether Dr. Borhan's opinion was entitled to controlling weight. Because only treating physicians' opinions can be given controlling weight, and because the ALJ apparently did not think that Dr. Borhan was a treating physician, the issue of controlling weight did not arise. But the ALJ's discussion of Dr. Borhan's treatment relationship with Mr. Howard is at odds with the record. It appears that in the ALJ's view, Dr. Pai was Mr. Howard's treating physician and Dr. Borhan was simply another doctor in the pain management practice who saw Mr. Howard on occasion. The ALJ supported this view by noting that Mr. Howard only saw Dr. Borhan on five of his twenty-five visits, and that the rest of the visits were with Dr. Pai. That is true, as far as it goes (the number of total visits may be incorrect, but it is immaterial), and considered in a vacuum it *might* support the ALJ's belief that there was no treatment relationship—though five visits with a physician is not an insignificant relationship, especially compared with non-examining sources such as State Agency consultants. But the ALJ's discussion leaves out the important fact that the five visits with Dr. Borhan represent five out of the last six visits to the pain management practice and a full year's worth of regular treatment just before rendering his opinion on Mr. Howard's limitations.

The ALJ's misunderstanding of Dr. Borhan's treatment relationship with Mr. Howard alone would likely demand a remand—it is difficult to imagine that this misunderstanding did not influence the ALJ's implicit decision not to give Dr. Borhan's opinion controlling weight. In

13

addition, the ALJ's error regarding the treatment relationship is compounded by defects in the other reasons he gave for discounting Dr. Borhan's opinion. First, the ALJ cited the fact that "the form contains no narrative support for the checked or circled findings." Neither the ALJ nor the Commissioner's brief cite authority for the proposition that a lack of narrative support is fatal to the opinion of a treating source, nor is it clear what additional information the ALJ would have liked Dr. Borhan to provide in a narrative that was not in his assessment. Moreover, the Court finds it richly ironic that the ALJ discounted Dr. Borhan's opinion because it was a "checklist form" and without "narrative support" just a paragraph after he gave "great weight" to the narrative-less checklist form assessments of two State Agency consultants who had never examined Mr. Howard.

Second, the ALJ noted that "the opinions primarily relied upon the claimant's subjective reports rather than objective evidence." But the ALJ did not find that the opinion was *inconsistent* with the medical evidence. Dr. Borhan cited an MRI showing degenerative disc disease (albeit minimal), which, as the ALJ found earlier in his decision, *could* have caused the alleged symptoms. Certainly, Dr. Borhan's opinion was inconsistent with those of the State Agency physicians, but "a contradictory opinion of a non-examining physician does not, by itself, suffice" as a reason to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Finally, the ALJ added that "the treatment notes indicate generally conservative treatment consisting of medications and injections." This is perhaps the weakest of the reasons given. The treatment notes of Dr. Borhan, Dr. Pai, and especially Dr. Hoffman, summarized above, make clear that the reason surgical intervention was not considered was not because the symptoms or medical evidence did not warrant surgery, but because Mr. Howard's condition

14

was too diffuse to be treated with surgery. As Mr. Howard put it, surgical treatment would have meant replacing or fusing every disc in his spine (Tr. 44). Moreover, Dr. Pai's treatment notes indicate that Mr. Howard's medication was a "high does of narcotic medications" (Tr. 347). For these reasons, the reasons articulated by the ALJ do not support nor fully explain his implicit rejection of a treating physician's opinion. The ALJ therefore has not provided an adequate "logical bridge" between the evidence and his conclusions. *See Terry*, 580 F.3d at 475.

**B.     Alternatively, the ALJ Failed to Justify the Weight Given to Dr. Borhan's Opinion.**

Even if the Court found that the ALJ was justified in implicitly declining to give controlling weight to Dr. Borhan's opinion based on the relatively paucity of the objective medical evidence, the ALJ would still have been required to give significant weight to the treating source opinion or articulate his reasons for giving it less weight. Once the ALJ articulates reasons for rejecting the treating physician's opinion, the ALJ must still determine what weight the physician's opinion is due under the applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). *See* 20 C.F.R. § 404.1527(d)(2). Even if not controlling, "treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling 96-2P, 1996 WL 374188 at *4. Factors the ALJ should consider when determining the weight to give the treating physician's opinion include the length of treatment and frequency of examination, whether the physician supported his opinion with sufficient explanations, the extent to which the treating physician presents relevant evidence to support his opinion, whether the physician specializes in the medical conditions at issue, and the consistency of the opinion. *See Hofslien v. Barnhart*, 439

15

F.3d 375, 377 (7th Cir. 2006); *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008); 20 C.F.R. § 404.1527(d)(2).

For the same reasons that rendered the ALJ's implicit controlling weight determination insufficient, the Court finds that the ALJ has not adequately articulated his reasons for giving essentially *zero* weight to the opinion of Dr. Borhan—a treating source and a pain management specialist at that—regarding the limiting effects of Mr. Howard's pain. Moreover, to the extent that the ALJ felt that Dr. Borhan's explanation for his opinion was insufficient, Social Security Ruling 96-2p admonishes ALJs that "in some instances, additional development required by a case—for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings—may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the record." The Court submits that this is just such a case: if the ALJ indeed thought that the lack of narrative support undermined the weight of Dr. Borhan's opinion, he should have requested further explanation.

**C.     The Case Must Be Remanded to the Commissioner**

Mr. Howard asks the Court to go beyond finding that the ALJ's decision was flawed and take the step of reversing the decision and direct that benefits be awarded. As noted above, if Dr. Borhan's opinion is entitled to controlling weight, Mr. Howard is entitled to a finding of disabled and an award of benefits. The Court cannot conclude, however, based on the current record, that Dr. Borhan's opinion was, in fact, entitled to controlling weight. The ALJ correctly noted that there was not a great deal of objective medical findings corroborating the rather extreme limitations assessed by Dr. Borhan, and the Court is aware that while "[t]he treating physician's opinion is important because that doctor has been able to observe the claimant over an extended

16

period of time, . . . it may also be unreliable if the doctor is sympathetic with the patient and thus too quickly finds disability." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). While the ALJ's articulation was flawed and based on misunderstandings of the record, whether Dr. Borhan's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" is a finding that the Commissioner must make on remand.

In addition, the Court notes that the ALJ's determination regarding Mr. Howard's credibility—which is the heart of his RFC determination—was undoubtedly affected by his evaluation of the medical evidence, particularly Dr. Borhan's opinion. Mr. Howard's testimony was largely consistent with Dr. Borhan's opinion of his limitations, and will therefore also need to be reconsidered to the extent that additional weight is given to that opinion on remand.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Howard's request that the Court find that he is entitled to disability benefits but **GRANTS** his request to remand the ALJ's decision [DE 1]. Accordingly, the Court now **REMANDS** this case to the Commissioner for further proceedings consistent with this Opinion and Order.

SO ORDERED.

ENTERED:  September 12, 2012 

/s/ JON E. DEGUILIO
Judge
United States District Court